# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**David Kimbrell,**

        **Plaintiff,**

**v.**                                                            Case No. 13-CV-2227

**Amsted Rail Company, Inc.**

        **Defendant.**

## **MEMORANDUM & ORDER**

Plaintiff David Kimbrell filed suit against defendant, his former employer, asserting a single claim under Kansas law for workers' compensation retaliation. This matter is presently before the court on defendant's motion for summary judgment (doc. 31). As will be explained, the motion is granted.

## I.    Facts

The following facts are uncontroverted or related in the light most favorable to plaintiff as the nonmoving party. Defendant Amsted Rail Company, Inc. operates its Griffin Wheel facility in Kansas City, Kansas. Griffin Wheel is a steel foundry that manufactures railroad car wheels. From 2006 through July 2011, plaintiff David Kimbrell worked as an hourly employee for defendant at its Griffin Wheel facility, primarily as a furnace helper. In early July 2011, defendant promoted plaintiff to a salaried production supervisor. Plaintiff held that position until his termination in June 2012.

In 2009, the Griffin Wheel plant occasionally shut down due to economic downturn and workload. During these shutdowns, plaintiff and other Griffin Wheel employees collected unemployment benefits through the state of Kansas. Upon the plant's reopening, however, plaintiff continued to collect unemployment benefits while working despite the fact that he was clearly not entitled to such benefits. To keep collecting benefits, plaintiff was required to certify on a weekly basis that he was not earning wages. Although an employer receives notification of the initial filing for unemployment benefits, no notice is sent concerning the weekly certifications required to continue receiving benefits. For 18 weeks in 2009, plaintiff misrepresented that he earned no wages when he was, in fact, working for and receiving a paycheck from defendant. Plaintiff does not dispute that he received between $423 and $448 in unemployment benefits during each of these weeks and that he ultimately received an overpayment of more than $6500.

In 2010, the state of Kansas sent plaintiff a determination letter finding that plaintiff had failed to report employment and/or correct earnings while receiving unemployment benefits and that plaintiff had committed unemployment fraud by willfully and knowingly making false representations to receive benefits not due. The determination letter sought immediate repayment of the overpayment plus interest. Plaintiff testified that he has repaid the full amount to the state and that he never advised defendant of the state's determination.

In Mary or early April 2012, Brian Robinson, Griffin Wheel's Manager of human Resources and Safety, received a report of unemployment benefit charges from the state of Kansas. The report identified six current employees, including plaintiff, and, in parentheses, noted certain dollar amounts charged against defendant's unemployment account for each

employee.  Because Mr. Robinson was not certain what the parentheses or the amounts therein indicated, he contacted Gina McCullough, defendant's Director of Human Resources.  Ms. McCullough asked Mr. Robinson to investigate the matter and to report back to her.  Thereafter, Mr. Robinson contacted the state of Kansas and was advised that the parentheses indicated an overpayment of unemployment benefits beyond that which an employee was lawfully entitled. During this same time frame, defendant's third-party vendor responsible for handling unemployment claims provided Mr. Robinson with determination letters from the state that found that the six employees had, in fact, overdrawn unemployment.  Mr. Robinson also independently verified the overpayments by reviewing payroll records and evaluating whether the employees were working during the period claimed.

Mr. Robinson's investigation, then, revealed that six current employees, including plaintiff, claimed unemployment benefits while working at Griffin Wheel.  Mr. Robinson passed his findings along to Ms. McCullough, who then reached out to Wayne Luce, defendant's Vice President of Human Resources, and provided him with a report.  Mr. Luce also reviewed the determination letters provided by defendant's third-party vendor.  Mr. Robinson, Ms. McCullough and Mr. Luce then talked via phone conference to discuss the status of the investigation and appropriate next steps.  Following the phone conference, Mr. Robinson conducted interviews with and suspended the six employees pending the outcome of the investigation. Plaintiff was interviewed and suspended on June 8, 2012.  Just a few days prior to his suspension, on June 4, 2012, plaintiff rolled his ankle at work.  He reported the injury to Michelle Colvin, his direct supervisor and Kelly Roberts, who handles workplace injuries for the

plant. Plaintiff did not request any medical treatment at the time and stated that he would "see how it goes." He subsequently took two to three days off work.

Ultimately, Mr. Luce, in consultation with Ms. McCullough, Mr. Robinson and Michal DeCola, Griffin Wheel's Plant Manager, made the decision to terminate the employment of all six employees, including plaintiff. Mr. Luce testified that although they considered the fact that plaintiff had repaid the money and that he was a seven-year employee, they determined on balance that the misrepresentation warranted termination rather than a less severe form of discipline. On June 21, 2012, defendant notified each of the six employees that their employment was terminated for collecting unemployment benefits during a time in which they were working for Griffin Wheel. It is undisputed that Mr. Luce and Ms. McCullough had no knowledge of plaintiff's ankle injury until after plaintiff's discharge. Mr. Robinson was aware of plaintiff's ankle injury at the time of his discharge and Mr. DeCola may have been aware of the injury. Both of those individuals averred that they had no reason to believe that plaintiff might file a claim for workers' compensation based on that injury.

On July 5, 2012, two weeks after his termination, plaintiff emailed Kelly Roberts, advised her that he was still experiencing pain and swelling related to his ankle roll and asked whether he was still able to see "a work comp doctor as previously offered?" Defendant sent plaintiff to KU MedWest where a doctor observed that plaintiff walked without a limp and had full range of motions and strength in his ankle. Plaintiff was instructed to use an ACE bandage and take ibuprofen or ice his ankle if it became aggravated. Plaintiff was not given any work restrictions and no physician ever issued plaintiff work restrictions or prescribed medication in connection with plaintiff's June 4, 2012 ankle roll. Following the visit to KU MedWest,

plaintiff did not return for further medical treatment and never asked Griffin Wheel for additional treatment. Plaintiff never filed a workers' compensation claim for his ankle injury and he characterizes that injury as "the same" as 2008 ankle sprain for which he was neither disciplined nor discharged. With respect to plaintiff's 2008 ankle injury, it is further undisputed that Griffin Wheel provided him medical treatment and, thereafter, that they ensured that he performed tasks within his medical restrictions.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II.     Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed.R.Civ.P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.

## III.    Analysis

This case arises from the court's diversity jurisdiction, *see* 28 U.S.C. § 1332, and the parties agree that plaintiff's claim is governed by Kansas law. Under Kansas law, an employer cannot discharge an employee for filing a workers' compensation claim or for sustaining an injury for which the employee might assert a future claim for workers' compensation benefits. *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 (10th Cir. 2014). In determining whether a workers' compensation retaliation claim can survive a motion for summary judgment, Kansas courts apply the *McDonnell Douglas* burden-shifting framework. *Id.* Thus, plaintiff must first establish a prima facie case of retaliation. *Id.* If he meets this burden, defendant must come forward with a legitimate, nonretaliatory reason for the discharge. *Id.* Plaintiff then has the burden of showing "by a preponderance of the evidence" that this legitimate reason is a pretext for retaliation in violation of state law. *Id.* Such a showing, so long as it would allow a reasonable jury to find the discharge was pretextual, entitles the plaintiff to proceed to trial. *Id.*

To establish a prima facie case for retaliation under Kansas law, plaintiff must establish that (1) he filed a claim for workers' compensation benefits or sustained an injury for which he might assert a future claim for such benefits; (2) the employer had knowledge of plaintiff's workers' compensation claim or injury; (3) the employer terminated plaintiff's employment; and (4) a causal connection exists between the claim or injury and the termination. *Id.* In its motion for summary judgment, defendant contends that summary judgment is appropriate because plaintiff cannot establish a prima facie case of retaliation and, in any event, cannot establish that defendant's proffered non-retaliatory reason for plaintiff's termination is a pretext for impermissible retaliation. As will be explained, when viewed in the light most favorable to plaintiff, the record evidence is insufficient to permit a reasonable jury to conclude that

defendant's proffered reason for terminating plaintiff's employment is pretextual. The motion for summary judgment, then, is granted.

The court begins by recognizing that a plaintiff's prima facie burden in workers' compensation retaliation cases is not onerous. *See Rebarchek v. Farmers Co-op. Elevator*, 272 Kan. 546, 557 (2001) (claimant's prima facie burden in workers' compensation retaliation case is not onerous). Bearing that in mind, the court concludes that plaintiff has satisfied his burden here. With respect to the second element of plaintiff's prima facie case, defendant urges that Mr. Luce was the sole decisionmaker and undisputedly had no knowledge of plaintiff's injury. Nonetheless, the evidence permits the reasonable inference that Mr. Luce made the decision with full participation from others, including Mr. Robinson, who undisputedly knew about plaintiff's injury. With respect to the fourth element of plaintiff's prima facie case, defendant contends that plaintiff cannot establish causation because the investigation into the conduct for which plaintiff was ultimately terminated began prior to his injury. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997) (simply completing the disciplinary process already set in motion does not necessarily lead to an inference of retaliatory motive). As plaintiff highlights, however, defendant suspended his employment only 4 days after his work-related injury. While plaintiff's job was certainly in jeopardy prior to his injury, rendering the temporal proximity in this case less probative, a reasonable jury could conclude based on the timing of events that a causal connection existed between plaintiff's injury and his discharge. *See Foster v. AlliedSignal, Inc.*, 293 F.3d 1187, 1194 (10th Cir. 2002) (firing plaintiff during absence for

work-related injury and within days of notification of intent to file workers' compensation claim sufficient to establish causation for purposes of prima facie case).[1]

Because plaintiff has established a prima facie case of retaliatory discharge, defendant must articulate a legitimate, nonretaliatory reason for terminating plaintiff's employment. Defendant's evidence demonstrates that it terminated plaintiff's employment because plaintiff fraudulently collected unemployment benefits by misrepresenting his work status while working for Griffin Steel. Defendant has satisfied its burden such that the burden of persuasion shifts back to plaintiff to demonstrate a genuine dispute of material fact as to whether defendant's stated reason is unworthy of belief. Plaintiff has not satisfied his burden.

In an effort to show pretext, plaintiff first argues that defendant treated similarly situated employees who had not suffered workplace injuries more favorably than him. Plaintiff avers that Sigmund Stewart, an employee who has never suffered a work-related injury, told him that he himself had been guilty of drawing unemployment benefits improperly while employed by defendant but that he had never been confronted about his misconduct or disciplined for it. Putting aside that plaintiff's evidence is inadmissible hearsay, the evidence does not establish pretext in the absence of any evidence that defendant knew about Mr. Stewart's alleged misconduct. *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1121 (10th Cir. 2007) (discriminatory animus cannot explain disparate treatment in the absence of evidence that employer knew about other employee's misconduct). Moreover, defendant's evidence

---

[1] Because the Kansas Supreme Court has expressly looked to Tenth Circuit decisions for guidance concerning the acceptable period of time between a plaintiff's protected activity and an adverse action, the court is comfortable doing so here. *See Rebarchek v. Farmers Cooperative Elevator*, 272 Kan. 546, 554–55 (2001).

demonstrates that it has investigated plaintiff's allegation concerning Mr. Stewart and that it has not uncovered any improper conduct on the part of Mr. Stewart who, incidentally, has denied telling plaintiff that he collected unemployment benefits while working for defendant. As defendant highlights, an appropriate "similarly situated" analysis in this case clearly cuts against any finding of pretext. Five other employees were terminated for collecting unemployment benefits while working for defendant and none of those employees had suffered workplace injuries in the six months leading up to their termination. This evidence demonstrates that defendant treated plaintiff the same as it treated employees who had not suffered on-the-job injuries.

Plaintiff also asserts that defendant "frowns" on workplace injuries and workers' compensation claims but he concedes that he is not aware of any comments made by Griffin Wheel management employees concerning workplace injuries or workers' compensation claims, negative or otherwise. Plaintiff testified that he believes Mr. Robinson was "out to get people on Work Comp claims" but he concedes that he does not have specific reasons for that belief, other than "just logically, financial reasons for the corporation." He further testified that "everybody" just had "a vibe" that Mr. Robinson was "out to get" people with on-the-job injuries but that he had no specific information to support the "vibe." Plaintiff's evidence constitutes sheer speculation and no reasonable jury could conclude from this testimony that defendant terminated plaintiff's employment on the basis of his on-the-job injury.[2]

---

[2] The only specific information that plaintiff offered in his deposition was that Mr. Robinson, on one occasion, told plaintiff that he was "going to get" an employee who was taking FMLA leave from Griffin Steel but possibly working another job at the same time. Plaintiff makes no effort to relate this evidence to his workers' compensation retaliation claim and this evidence does not

Finally, plaintiff attempts to show pretext by highlighting apparent inconsistences in the record concerning the extent to which Mr. Robinson was involved in the decision to terminate plaintiff's employment. In his deposition, Mr. Robinson distanced himself from the termination decision and focused instead on his role in the investigation itself. Ms. McCullough, in contrast, testified that she and Mr. Robinson "weighed in" on the termination decision and Mr. Luce also testified that Mr. Robinson was involved in the decision. Any inconsistency, however, does not bear on the reason provided by defendant for the termination of plaintiff's employment. As such, that inconsistency does not permit an inference that defendant's proffered reason is unworthy of belief.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 31) is granted.

**IT IS SO ORDERED.**

Dated this 13th day of May, 2014, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

tend to show that defendant's proffered reason for terminating plaintiff's employment is pretextual. In fact, it supports the conclusion that defendant will seek the termination of any employee who misrepresents facts relating to their employment with Griffin Steel.